# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KEVIN AYERS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| POLICE OFFICER SEAN QUINN, | : | |
| et al., | : | No. 16-4339 |
| Defendants. | : | |

## MEMORANDUM OPINION

Timothy R. Rice                                                                September 8, 2017
U.S. Magistrate Judge

Plaintiff Kevin Ayers alleges that Defendants, Police Officers Sean Quinn and Robert Bakos, violated his constitutional right to be free from malicious prosecution  See Am. Compl. (doc. 9).  Defendants seek summary judgment, claiming that Ayers fails to establish several critical elements of his malicious prosecution claim and that they are entitled to qualified immunity.

Defendants' motion is granted.  No reasonable juror could find that Quinn and Bakos initiated criminal proceedings against Ayers, knowingly provided false information about the case to the prosecutor, or interfered with the prosecutor's discretion.

## I.     Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The evidence and any inferences from the evidence must be viewed in the light most favorable to the non-moving party.  See Ray v. Warren, 626 F.2d 170, 173 (3d Cir. 2010).  If reasonable minds could conclude that there are sufficient facts to support a plaintiff's claims, summary judgment should be denied.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Alternatively, summary judgment should be granted if no "reasonable jury could return a verdict for the nonmoving party," based on the evidentiary record. Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010).

A plaintiff may bring a civil rights action under 42 U.S.C. § 1983 against any person who allegedly deprived the plaintiff of his federal constitutional rights while acting pursuant to state law. See West v. Atkins, 487 U.S. 42, 48 (1988). To prevail on a Section 1983 claim involving a violation of the Fourth Amendment due to malicious prosecution, a plaintiff must show: (1) the defendant initiated a criminal proceeding against the plaintiff; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for an improper purpose; and (5) he was seized or deprived of his liberty as a result of the criminal proceeding. See Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

**II.    Facts Most Favorable to Ayers**

On the evening of October 5, 2012, Ayers was riding in a white, heavily tinted car in a high-crime area of Philadelphia with his friend, Alexander Frazier, and Frazier's cousin, Anthony Wimms, whom Ayers did not really know. See Pl.'s Praecipe to Attach Exhibits (doc. 29) Ex. 5, 5/17/2017 K. Ayers Dep. at 18-19, 23-26, Ex. 2, 8/8/2014 Crim. Tr. N.T. at 112-13, 107-09, 127; Defs.' Statement of Undisputed Facts (doc. 23-2) ¶ 24; Pl.'s Resp. to Facts (doc. 28-1) ¶ 24. Wimms was driving, Frazier was in the front passenger seat, and Ayers was in the back seat behind Frazier. See 8/8/2014 Crim. Tr. N.T. at 106-09. Ayers did not see a gun or holster in the backseat area. See id. at 111, 125.

Shortly after 10:00 p.m., Ayers noticed police lights flashing behind the car.[1]  See id. at 112.  Although Ayers may have moved his body while the police were flashing their lights, he did not bend down toward the floor.  See id. at 113, 131-32.

Wimms pulled his car over almost immediately.  See id. at 113.  The police car stopped and Officers Bakos and Quinn, who had been riding in the police car, walked to Wimms's car.  See Defs.' Statement of Undisputed Facts ¶¶ 1, 9; Pl.'s Resp. to Facts ¶¶ 1, 9.  As Bakos approached Wimms's side of the car, Wimms threw the car keys on the roof and stuck both of his hands out of the window.  See Defs.' Statement of Undisputed Facts ¶ 10; Pl.'s Resp. ¶ 10.  Bakos asked Wimms for his license and registration and the two then had a heated conversation.  See 5/17/2017 K. Ayers Dep. at 26-27; 8/8/2014 Crim. Tr. N.T. at 114.

As Quinn approached Frazier's and Ayers's side of the car, he observed Ayers shifting his body from side to side.  Defs.' Statement of Undisputed Facts ¶ 15; Pl.'s Resp. to Facts ¶ 15.  Quinn told Ayers and Frazier to put their hands where he could see them and Ayers placed his hands on the back of the front passenger seat headrest.  Defs.' Statement of Undisputed Facts ¶¶ 16, 17; Pl.'s Resp. ¶¶ 16, 17.

Ayers later moved his hands back to his waist, and Quinn directed him to keep his hands out.  Defs.' Statement of Undisputed Facts ¶ 19; Pl.'s Resp. to Facts ¶ 19; 8/8/2014 Crim. Tr. N.T. at 115.  While using a flashlight to observe the floor area where Ayers was shuffling his feet, Quinn noticed an empty gun holster under Ayers's feet.  Defs.' Statement of Undisputed Facts ¶ 20; Pl.'s Resp. to Facts ¶ 20.  Quinn removed Ayers from the car and frisked him.  See Defs.' Statement of Undisputed Facts ¶¶ 22, 23; Pl.'s Resp. ¶¶ 22, 23.  Quinn and Bakos next

---

[1] The police pulled over the car because it did not have a registration sticker on the license plate.  See Defs.' Statement of Undisputed Facts ¶ 4; Pl.'s Resp. to Facts ¶ 4.

3

removed Frazier from the car and Wimms at gun point. See Defs.' Statement of Undisputed Facts ¶ 25; Pl.'s Resp. to Facts ¶ 25; 8/8/2014 Crim. Tr. N.T. at 116-17.

The police asked Wimms several times for permission to search his car, but Wimms refused and told the police to obtain a warrant. See 8/8/2014 Crim. Tr. N.T. at 117. Quinn nevertheless searched the backseat of the car and recovered the holster he had observed under Ayers's feet as well as a loaded revolver under the back of the driver's side seat. See Defs.' Statement of Undisputed Facts ¶¶ 25, 26; Pl.'s Resp. to Facts ¶¶ 25, 26. Ayers, Frazier, and Wimms told Quinn that they did not own the gun. See Defs.' Statement of Undisputed Facts ¶ 29; Pl.'s Resp. to Facts ¶ 29; 8/8/2014 Crim. Tr. N.T. at 140.

Ayers also told Quinn that he did not have a permit to carry a gun because he was not allowed to carry a gun. See Defs.' Statement of Undisputed Facts ¶ 27; Pl.'s Resp. to Facts ¶ 27. Wimms initially told the police that he was a prison guard and had a permit to carry a firearm, but that the gun found by Quinn was not his. See S.J. Mot., Ex. C, 2/8/17 S. Quinn Dep. at 32, 34. He later told the officers that he was temporarily suspended from his position as a prison guard and then admitted he had been terminated from his position for some time. See id. at 34.

The police arrested Ayers for unlawfully possessing the gun found in the car and Wimms for falsely impersonating an officer. See S.J. Mot. (doc. 23), Ex. A, 10/6/12 Investigation Interview R.; 2/8/17 S. Quinn Dep. at 45-46. Frazier was released at the scene. See S.J. Mot., Ex. B, 8/7/2014 Crim. Tr. N.T. at 103

In an investigation report prepared shortly after the arrests, Bakos reported Wimms's conduct during the stop, including his false statements about being employed as a prison guard, and Wimms's arrest for such statements. See 10/6/12 Investigation Interview R. However,

during Ayers's preliminary hearing, Quinn did not inform the judge about Wimms's arrest; he solely provided material facts about Ayers's arrest. See 2/18/17 S. Quinn Dep. at 44.

Ayers was held for court on four gun possession charges: unlawful possession of a firearm, carrying a firearm without a license, carrying a firearm in public, and carrying a loaded weapon. See Ct. Summ. at 4. He remained in jail until his August 2014 criminal trial, when a jury found him not guilty of all charges. See 5/17/2017 K. Ayers Dep. at 9-10; Ct. Summ. at 4.

### III. Discussion

Quinn and Bakos contend that Ayers's malicious prosecution claim must be dismissed because he cannot show that they initiated the criminal proceedings against him. I agree.

In most circumstances, a plaintiff cannot establish the "initiation" element of a malicious prosecution claim against a police officer because prosecutors, rather than police officers, initiate criminal proceedings. See O'Connor v. City of Phila., No. 05-02879, 2006 WL 1490134, at *7 (E.D. Pa. May 26, 2006) (citing Stango v. Rodden, No. 00-5709, 2001 WL 1175131, at *4 (E.D. Pa. Aug. 21, 2001)). A court, however, may find that a police officer initiated a criminal proceeding "if the officer knowingly provided false information to the prosecutor or otherwise prevented the prosecutor from making an informed decision to prosecute." Id.; see also Gallo v. City of Phila., 161 F.3d 217, 220 n.2 (3d Cir. 1998); Henderson v. City of Phila., 853 F. Supp. 2d 514, 518-19 (E.D. Pa. 2012).

Ayers does not argue that Quinn and Bakos knowingly provided false information to the prosecutor or otherwise prevented the prosecutor from making an informed decision to prosecute. See Pl.'s Resp. (doc. 28) at 5-9. Instead, he contends that, during the preliminary hearing, the officers recklessly withheld from the judge the fact that Wimms had lied about his

5

job during the incident.[2] See id. at 7. At the time of the preliminary hearing, however, the prosecutor already had exercised his discretion to initiate the criminal action against Ayers. There also is no evidence or claim that the officers failed to inform the prosecutor about Wimms's actions. In fact, in the investigation record created by the police department hours after the incident, Bakos stated that Wimms had lied to the police about his employment and was arrested on that basis. See 10/6/2012 Investigation Interview R.

Because neither Quinn nor Bakos prosecuted the case and because there is no evidence that the officers knowingly provided false information or interfered with the discretion of the prosecutor, Ayers has failed to meet the initiation element of his malicious prosecution claim. See O'Connor, 2006 WL 1490134, at *8. Defendants also argue that Ayers cannot establish the probable cause and malice elements of his claim and that they are entitled to qualified immunity. Given my conclusion that Ayers cannot establish the first element of his claim, I need not consider these additional arguments.[3]

---

[2] Although Ayers does not provide the preliminary hearing transcript or cite where in the record the officers admittedly "withheld the fact that [Wimms] lied during [Ayers's ] criminal preliminary hearing," Pl.'s Resp. at 7, Quinn testified during his deposition that he did not tell the preliminary hearing judge that Wimms was arrested for impersonating a corrections officer. See 2/8/2017 Quinn Dep. at 44.

[3] Ayers contends that the police lacked probable cause to arrest him for the firearm offenses based on Wimms's conduct during the stop, the location of the gun, the officers' failure to investigate the gun owner, and the fact that he never bent down toward the gun. Pl.'s Resp. at 6-9. Even if a jury could find that there was no probable cause, Ayers's claim must fail because he cannot show Bakos and Quinn initiated his prosecution. Further, to the extent Ayers is arguing that the officers lacked probable cause to arrest him, Ayers has not brought a claim for false arrest and is now statutorily barred from bringing such a claim. See Brown v. Makofka, 644 F. App'x 139, 143 (3d Cir. 2016) ("elements of a false-arrest claim are (a) that an arrest occurred; and (b) that the arrest was made without probable cause") (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995)); see also Wallace v. Kato, 549 U.S. 384, 387 (2007) (two-year statute of limitations for false arrest claim started running when plaintiff was held on charges by magistrate).

An appropriate order follows.